DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

LAUREN ABERCROMBIE,

Appellant,

v.

RYAN NENNEMAN,

Appellee.

No. 2D2023-2110
_____

January 22, 2025

Appeal from the Circuit Court for Pasco County; Linda H. Babb, Judge.

Jonah K. Dickstein of Dickstein Law, Tampa, for Appellant.

No appearance for Appellee.

LABRIT, Judge.

Lauren Abercrombie challenges an injunction for protection against stalking that the trial court entered against her. Because the evidence is legally insufficient to support the injunction, we reverse.

Ms. Abercrombie and Ryan Nenneman dated for several months. More than a year and a half after their relationship ended, Mr. Nenneman petitioned for a stalking injunction against Ms. Abercrombie pursuant to section 784.0485, Florida Statutes (2023). The trial court held an evidentiary hearing on the petition, at which Mr. Nenneman, Ms. Abercrombie, and Ms. Abercrombie's father testified. The trial court found based on the evidence that Mr. Nenneman was a victim of stalking,

and it entered a final judgment of injunction for protection against stalking from which Ms. Abercrombie now appeals.

Ms. Abercrombie raises multiple arguments but we primarily address only one. Ms. Abercrombie argues—and we agree—that the evidence is insufficient to establish that her conduct caused substantial emotional distress.[1] Under section 784.0485(6)(a), a court may enter an injunction "when it appears to the court that the petitioner is the victim of stalking." Under section 784.048(2), a person commits stalking if she or he "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." And under section 784.048(1)(a), "harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." In this case, to be entitled to a stalking injunction, Mr. Nenneman had to show that Ms. Abercrombie's conduct caused substantial emotional distress.

"Critically, '[i]n determining if an incident causes substantial emotional distress, courts use a reasonable person standard, not a subjective standard.' " *Sinopoli v. Clark*, 290 So. 3d 159, 162 (Fla. 2d DCA 2020) (alteration in original) (quoting *Goudy v. Duquette*, 112 So. 3d 716, 717 (Fla. 2d DCA 2013)). That is, we consider whether the conduct would cause substantial emotional distress to a reasonable person in the petitioner's shoes. *See id.* (citing *Leach v. Kersey*, 162 So. 3d 1104, 1106 (Fla. 2d DCA 2015)). This level of distress "is greater than ordinary distress," *Kaye v. Wilson*, 363 So. 3d 1155, 1159 (Fla. 2d DCA 2023), and "[a]nnoyance, frustration, or embarrassment will not suffice," *Potts v.*

---

[1] We ordinarily review permanent injunctions for abuse of discretion, "[b]ut the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law that we review de novo." *Washington v. Brown*, 300 So. 3d 338, 340 (Fla. 2d DCA 2020).

*Lewis*, 372 So. 3d 322, 323 (Fla. 2d DCA 2023). As we've also explained, "a reasonable person does not suffer substantial emotional distress easily." *Kaye*, 363 So. 3d at 1159.

Here, the evidence presented at the hearing showed the following. The parties' relationship ended in December 2021. In the first few months of 2022, Ms. Abercrombie called and text messaged Mr. Nenneman numerous times. There was no evidence of any messages Ms. Abercrombie may have left or sent. Mr. Nenneman testified only that Ms. Abercrombie would usually say on these calls, "[W]ait, wait, let me talk, and then [he] would hang up . . . within seconds." Mr. Nenneman also testified that Ms. Abercrombie appeared at his workplace several times in the first half of 2022, but he did not interact with her when she did.

Thereafter, in the fall of 2022, Ms. Abercrombie filed a petition for a sexual violence injunction against Mr. Nenneman based on incidents that allegedly occurred when they dated. The circuit court held a hearing on Ms. Abercrombie's petition on October 20, 2022, and it denied her request for a temporary injunction. The reason for the denial is not in the court records, but Ms. Abercrombie testified that it was due to her failure to include a police report number on her petition. After the October 20 hearing, Ms. Abercrombie followed Mr. Nenneman in the courthouse parking lot, which led Mr. Nenneman to seek and obtain a police escort to his car. Mr. Nenneman recorded a portion of this encounter with his phone, and Ms. Abercrombie can be heard crying on the recording and saying, "Ryan, where are you going?"

On the same day as the October 20 hearing, Ms. Abercrombie filed a second petition for a sexual violence injunction against Mr. Nenneman, this time with a police report number. In February 2023, the trial court held an evidentiary hearing on her second petition and denied it, finding

3

the evidence insufficient to demonstrate that Ms. Abercrombie needed protection from Mr. Nenneman. Then, on July 13, 2023, Mr. Nenneman received two phone calls from an unknown phone number. He declined the first call, answered the second, and hung up within a few seconds after he heard Ms. Abercrombie's voice.[2] Mr. Nenneman filed his petition for a stalking injunction the following day, on July 14, 2023.

We conclude that the evidence of the foregoing events is insufficient to show that a reasonable person in Mr. Nenneman's position would suffer substantial emotional distress. Case law holds that "the reasonable person standard for substantial emotional distress is not met . . . where no threats were made or no public embarrassment was involved." *Decker v. Munson*, 317 So. 3d 301, 304 (Fla. 2d DCA 2021). And Mr. Nenneman did not present evidence of any threats, public shaming, or other conduct that would induce "stress of great proportion, in the nature of fear and concern." *See Washington v. Brown*, 300 So. 3d 338, 341 (Fla. 2d DCA 2020). Relatedly, Mr. Nenneman did not identify any adverse consequences from Ms. Abercrombie's conduct that might cause substantial emotional distress in a reasonable person. While Mr. Nenneman was concerned after the July 2023 phone calls that Ms. Abercrombie was going to "get fixated again and start showing up to [his] job or start calling [him] repeatedly," this unease or frustration over having to deal with an ex is not unique to this breakup, nor is it something that evokes a *substantial* level of distress in a reasonable person. *See Paylan v. Statton*, 376 So. 3d 822, 826–28 (Fla. 2d DCA

---

[2] Ms. Abercrombie denied making these calls but the trial court found Mr. Nenneman's testimony more credible, and we must defer to the trial court's credibility findings. *See Sinopoli*, 290 So. 3d at 163.

4

2023); *Bilby v. Wilson*, 324 So. 3d 580, 581 (Fla. 5th DCA 2021); *Venn v. Fowlkes*, 257 So. 3d 622, 624 (Fla. 1st DCA 2018).

We also note that on this record, Ms. Abercrombie's petitions for sexual violence injunctions against Mr. Nenneman and any police report she filed in conjunction therewith cannot be considered harassment or stalking. The evidence did not show that these actions "serve[d] no legitimate purpose" so they could not support a stalking injunction.[3] *See* § 784.048(1)(a); *DiTanna v. Edwards*, 323 So. 3d 194, 202 (Fla. 4th DCA 2021); *see also Craft v. Fuller*, 298 So. 3d 99, 104 (Fla. 2d DCA 2020) (explaining that the question of whether conduct serves a legitimate purpose is broadly construed and covers a wide variety of conduct).

At bottom, the evidence before us is legally insufficient to support the stalking injunction against Ms. Abercrombie. We therefore reverse and remand with instructions to dismiss Mr. Nenneman's petition.

Reversed and remanded.

SILBERMAN and SMITH, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.

---

[3] Indeed, the trial court ultimately denied Ms. Abercrombie's petition for lack of sufficient proof, not because it found her petitions frivolous or harassing. Ms. Abercrombie also had a right to seek redress of her grievances in court, *see* art. I, § 21, Fla. Const., and nothing in the record indicates that she abused that right.